IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **05-cv-01858-EWN-MJW**

SEAN HARRINGTON,

Plaintiff,

v.

MADELINE WILSON and the "LAW OFFICE OF MADELINE WILSON";
CHRISTY RYAN;
BILL J. FYFE and COLUMBINE COUNSELING CENTER, P.C.;
LAURA ARCILISE, in her personal capacity;
LOUISE CULBERSON-SMITH, in her personal capacity;
JOHN GLEASON in both his personal and official capacity;
WENDELL PRYOR in his official capacity;
ROBERT EVANS, in his official capacity;
the JEFFERSON COUNTY COMBINED COURT, through
the COLORADO ATTORNEY GENERAL, JOHN SUTHERS, in his official Capacity,

Defendants.

---

**RECOMMENDATIONS ON**
**(1) DEFENDANT CHRISTY RYAN'S MOTION TO DISMISS (Docket No. 25);**
**(2) THE FYFE DEFENDANTS' MOTION TO DISMISS (Docket No. 29);**
**(3) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
**(filed by defendant Madeline Wilson and the Law Office of Madeline Wilson)**
**(Docket No. 38);**
**(4) STATE DEFENDANTS' MOTION TO DISMISS (Docket Nos. 39 and 42); and**
**(5) PLAINTIFF'S EMERGENCY FORTHWITH MOTION FOR PRELIMINARY**
**INJUNCTION AND FOR SANCTIONS (Docket No. 52)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

        This case is before this court pursuant to a General Order of Reference to

United States Magistrate Judge (Including Dispositive Motions) issued by District Judge

Edward W. Nottingham on September 27, 2005 (Docket No. 2).

2

The pro se plaintiff, Sean Harrington, is quite obviously an extremely disgruntled litigant in a very acrimonious divorce and custody battle in Jefferson County ("Jeffco") District Court.[1]  He commenced this action on September 23, 2005 (Docket No. 1), and subsequently filed a First Amended Complaint on October 28, 2005 (Docket No. 22),[2] in which he names as defendants a host of individuals and entities who or which are/were involved in that dispute or received complaints about the same from the plaintiff.  More specifically, the named defendants are his ex-wife, Christy Ryan; her divorce attorney, Madeline Wilson and her law office; Special Advocate psychologist Bill Fyfe and the Columbine Counsel Center (of which Dr. Fyfe is an owner/shareholder); Laura Arcilise, Jeffco District Court Judge Tidball's Division Clerk; John Gleason, the Attorney Regulation Counsel who did not sanction Wilson following the plaintiff's complaints; Louise Culberson-Smith, an attorney in the Attorney Regulation Counsel office who allegedly received plaintiff's complaints about Wilson; Wendell Pryor of the Colorado Civil Rights Division who responded to the plaintiff's complaints of discrimination by the Jeffco courts; Robert Evans, the ADA Coordinator for the First Judicial District, which includes Jeffco; and the Jeffco Combined Courts

---

[1]In his response to the State Defendants' motion to dismiss, the plaintiff states that his claims arise "not solely from a marital dissolution case in [Jeffco] District Court, but also from a [Jeffco] civil commitment proceeding, several county court civil restraining order cases and from Plaintiff's contact with various State agencies that was extrinsic to any of the aforesaid cases."  (Docket No. 49 at 1).

[2]Plaintiff electronically filed a Second Amended Complaint (Docket No. 61), but that pleading was stricken (Docket No. 65) because plaintiff did not seek leave to file it or show written consent of the adverse parties and because on January 3, 2006, this court had directed that the parties could not file any new motions until this court had an opportunity to rule on the outstanding motions to dismiss.  (Docket No. 58).

through the Colorado Attorney General, John Suthers.  Plaintiff has not named Judge

Tidball as a defendant, but he has repeatedly designated the Judge in his pleadings as

"a civil equivalent of an unindicted co-conspirator."  (Am. Compl., Docket No. 22, at 5, ¶

13; 92 n.60).

In this action, plaintiff alleges the following 28 claims for relief: (1) reckless and

intentional infliction of emotional distress (against Wilson and Ryan); (2) civil

conspiracy to conceal the plaintiff's minor child (against Wilson and Ryan); (3)

negligent infliction of emotional distress (against Wilson and Ryan); (4) civil conspiracy

to deny access to the courts (against Wilson, Ryan, and Arcilise); (5) extreme and

outrageous conduct (against Wilson, Ryan, and Arcilise); (6) breach of contract

(against Ryan and Wilson); (7) breach of the covenant of good faith and fair dealing

(against Ryan and Wilson); (8) abuse of process (against Wilson and Ryan); (9)

malicious prosecution (against Wilson); (10) aiding and abetting (against Wilson); (11)

civil rights violation pursuant to 42 U.S.C. § 1983 for violation of First Amendment

exercise of petitioning, equal protection, due process, and meaningful access to the

court (against Wilson, Ryan, and Arcilise); (12) violation of 42 U.S.C. § 1985(3)

(against Ryan, Wilson, and Arcilise); (13) violation of 42 U.S.C. §§ 1983 and 1985(3)

for violation of the Equal Protection Clause and the First Amendment exercise of

petitioning (against Wilson, Culberson-Smith, and Gleason); (14) violation of 42 U.S.C.

§ 1983 and Colo. R. Civ. P. 251.1, 251.11, and 251.12 (against Gleason); (15)

unconstitutional of Colo. R. Civ. P. 251.9 (against Gleason and State of Colorado);

(16) violation of 42 U.S.C. §§ 12101 and 1983 and §§ 24-34-205 and 24-34-601,

4

C.R.S. (against Pryor); (17) violation of 42 U.S.C. § 1986 (against Ryan, Wilson,

Arcilise, Gleason, and Culberson-Smith); (18) violation of the Americans with

Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. (against the state

defendants); (19) violation of § 504 of the Rehabilitation Act of 1973, as amended, 29

U.S.C. § 794 (against the state defendants); (20) violation of § 24-34-601, C.R.S.

(against the state defendants); (21) bad faith breach of contract (against Fyfe and

Columbine Counseling Center); (22) breach of the covenant of good faith and fair

dealing (special assumpsit) (against Fyfe and Columbine Counseling Center); (23)

violation of state and federal anti-trust consumer protection laws (against Fyfe and

Columbine Counseling Center); (24) negligent misrepresentation/promissory estoppel

(against Fyfe and Columbine Counseling Center); (25) violation of 42 U.S.C. § 1983

(against Fyfe); (26) extreme and outrageous conduct in the nature of an abuse of

power (against Fyfe and Columbine Counseling Center); (27) civil conspiracy to extort

fees (against Fyfe and Columbine Counseling Center); and (28) common law fraud

(against Fyfe and Columbine Counseling Center).

Plaintiff's extremely prolix First Amended Complaint includes the following

factual allegations.  (See App. A to the Am. Compl. - Docket No. 22-2).  Plaintiff and

defendant  Ryan were married in 1993 in Texas and moved to Colorado the following

year.  Their daughter Shelby was born on June 12, 1995.  In November 1999, Ryan

abruptly flew to Texas with Shelby, and the following month Ryan retained defendant

Wilson as counsel and petitioned for dissolution of marriage in Colorado.  The parties

were divorced in May 2000.  At permanent orders, Ryan was awarded sole decision-

making and residential responsibility, and plaintiff was granted supervised parenting time on a weekly basis.  "As a direct and proximate result of the divorce, the sudden loss of contact with his child and the defendants' successfully executed fraud-on-the-court, Plaintiff experienced severe depression," and he was placed "on numerous medications (on a trial basis) in an effort to treat his deteriorating psychiatric condition." (Docket No. 22-2 at 1).

On July 6, 2000, Wilson obtained a temporary restraining order against the plaintiff "based upon misleading and fraudulent allegations," and the next day, she successfully petitioned for a mental health hold on the plaintiff.  The same day, he was served with an order to vacate his home because he was allegedly destroying it. Plaintiff was taken to the state mental hospital requested by Ryan, where he remained confined for three months "at the behest of Ryan, Wilson and another [Jeffco] District court judge situated just down the hall from the divorce judge."  Plaintiff's faxed request to continue Wilson's restraining order hearing, which was held during his civil commitment, was disregarded by the state court.  Due to plaintiff's absence, the restraining order was made permanent.  Plaintiff was given no opportunity to be heard. Plaintiff left Colorado shortly after his discharge from the mental hospital in September 2000.

Plaintiff retained counsel in August 2000, and at his counsel's request, the court appointed a Special Advocate to make recommendations to the court regarding parental responsibilities.  Based upon such recommendations, the parties subsequently stipulated to a modification of parental responsibilities and parenting time, which was

approved as an order of the court on November 6, 2001.

Plaintiff commenced a state court action in spring 2001 against Ryan, Wilson, and others. Plaintiff's claims against certain defendants in that action were eventually dismissed with prejudice, and Ryan and Wilson entered into a negotiated settlement with plaintiff, which included plaintiff's voluntary dismissal of his appeal of the Permanent Orders of the state trial court. The agreement included specified parenting time for the plaintiff.

On June 30, 2003, however, Ryan, through Wilson, filed an emergency motion seeking the immediate return of Shelby, alleging she was in imminent physical and emotional danger and requesting a hearing within seven days. Wilson telephoned plaintiff at 9:34 p.m. on July 1, 2003, to notify him that a hearing had been scheduled the following day at 1 p.m. Plaintiff did not see a copy of that motion until a few minutes before the hearing after defendant Division Clerk Arcilise faxed plaintiff a copy. Plaintiff drafted a response and requested an opportunity to present witnesses and exhibits. Plaintiff appeared pro se at the hearing by telephone. After hearing testimony, Judge Tidball signed a written order prepared by Wilson, which plaintiff contends omitted conditions stated in the Judge's oral ruling. That order suspended plaintiff's parenting time until further order of the court or by agreement of the parties.

Plaintiff filed a motion for post-deprivation and "normal evidentiary hearing" and for restoration of his stipulated parenting time, which was denied on August 18, 2003. Plaintiff appealed that ruling to the Colorado Court of Appeals and moved for a limited remand for the purpose of restoring parenting time. Four months later, the Court of

Appeals advised plaintiff that if he wished to restore parenting time, "he may only do so by abandoning his appeal through voluntary dismissal." (Docket No. 22-2 at 3-4) (footnote omitted). Plaintiff declined.

Judge Tidball appointed a new Special Advocate, defendant Fyfe, on August 30, 2003. The Order of Appointment set forth the fees and the scope of his appointment, and Fyfe and plaintiff executed a Fee Contract. Fyfe's recommendations have not yet been approved by the trial court.

During 2004, "Plaintiff conducted a great deal of legal research and concluded that the July 2nd 2003 interlocutory Order suspending parenting time . . . did not affect other forms of contact, including mail and telephonic contact (as provided for in the state court's Nov. 6th 2001 order/stipulation) and such Order did not revoke Plaintiff's statutory right to know the whereabouts of his daughter or access to her school and medical records." (Docket No. 22-2 at 5). Wilson and Ryan "rebuffed" plaintiff's request for Shelby's address and contact information and disregarded plaintiff's May 2004 interrogatories. (Docket No. 22-2 at 5). "Plaintiff then continued his letter-writing campaign to Wilson" demanding such information, but such requests "were either rebuffed or disregarded." (Docket No. 22-2 at 5). Plaintiff conducted his own investigation, hired a private investigator, and confirmed that Ryan had moved with Shelby four times in four years "in an apparent effort to evade him and had fled to Dacatur, Texas with . . . Wilson's knowledge, aid and encouragement." (Docket No. 22-2 at 5).

In August 2004 plaintiff filed a Motion for Substitution of Judge, which, according

to the plaintiff, "has the effect of suspending the proceeding indefinitely."  (Docket No. 22-1 at 11; Docket No. 22-2 at 6).

Plaintiff further asserts that "[b]etween the years of 2000 through 2005, Defendant Wilson attempted to obtain restraining orders against Plaintiff on not less than four separate occasions.  Of these, one was denied after hearing for lack of merit; one was dismissed for failure to prosecute; one was denied after hearing for failure to locate the accused; and one, procured through fraud and 'conspiratorial manipulations,' was granted, but later vacated as apart of stipulated, ordered Agreement. . . .  All four of Wilson's restraining orders contained voluminous material misrepresentation, falsification and distortion of facts concerning, for example, allegations of attempted assaults, death threats, stalking, threats of bodily harm, threats of economic harm, *inter alia*."  (Docket No. 22-3 at 1, ¶¶ 1-2).

Plaintiff seeks monetary relief as to all claims (Docket No. 22 at 93), as well as specified declaratory and injunctive relief, including:

> []For a preliminary and permanent injunction prohibiting Defendant Wilson from further aiding, assisting and abetting Defendant Christy Ryan from concealing the whereabouts of Shelby Harrington from Plaintiff.
>
> . . .
>
> []Declaratory judgment, decreeing Plaintiff's clearly established constitutional right to seek redress in Colorado courts for any claim that rightly accrues under the law; that the state courts must be available to effectuate that right and that no person[s], including judicial officers, officers of the court, court clerks or private persons may frustrate or infringe that right without articulating a compelling state interest; and that the right exists irrespective of convenience or disability, absent a showing that Plaintiff/petitioner has engaged in abusive litigation for some improper purpose.

9

[]Injunctive relief, enjoining defendants Wilson, Ryan and Arcilise from partaking in any confederation to further infringe upon or frustrate Plaintiff's right of access to the courts.

. . .

[]That this Court declare that defendant Wilson's conduct, as *prima facie* alleged by Plaintiff, should be subject to the disciplinary action by the ARC or alternatively, pursuant to the ARC's request for "judicial findings," that this Court declare that defendant Wilson's conduct was, in fact, in violation of the applicable Rules of Professional Conduct, if proved true at the time of trial of this matter.

[]For a preliminary and permanent injunction requiring the ARC to enforce the Rules of Professional Conduct without the imposition of condition precedents that are lawfully required and without regard for individual official's personal likes and dislikes of complainants, groups of complainants or the attorneys complained of.

. . .

[]For a preliminary and permanent injunction requiring the Colorado Civil Rights Commission to fulfill its charter under C.R.S. § 24-34-205 with specific respect to, "the state judicial systems" in a manner not inconsistent with the statute.

. . .

[]That this Court declare the actions of the State Defendants, as complained of hereinabove, to be in violation of the Rehabilitation Act . . . and the Americans with Disabilities Act, . . . .

[]That this Court issue an injunction ordering the State Defendants to take appropriate steps to bring those features of its services and facilities likely to be used by Plaintiff in the future into compliance with the Rehabilitation Act and the Americans with Disabilities Act; . . .

(Am. Comp. at 93-96).

## **Pending Motions**

Five motions are now before the court for recommendation.  The first motion is

Defendant Christy Ryan's Motion to Dismiss (Docket No. 25). In that motion, plaintiff's ex-wife seeks dismissal of the First Amended Complaint on the following grounds: (1) violation of Fed. R. Civ. P. 8(a)(2), 8(e)(1), and 12(f); (2) lack of federal subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine; (3) abstention under the domestic relations exception; (4) abstention under the *Younger* doctrine; and (5) failure to state claims for relief under 42 U.S.C. §§ 1983, 1985, and 1986 as Ryan is not a state actor and because the best that plaintiff has offered in his pleading is a series of conclusory allegations that Ryan conspired with her divorce lawyer, a judge or judges, a court clerk, and regulatory counsel to deprive the plaintiff of his civil rights, which is insufficient. Defendant Ryan also joins in various arguments raised in the other dispositive motions.

The next motion before the court is the Fyfe Defendants' Motion to Dismiss (Docket No. 29) in which "the Fyfe Defendants" (Dr. Fyfe and Columbine Counseling Center, P.C.) raise the following grounds for dismissal of the Amended Complaint: (1) lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine; (2) abstention under the domestic relationship exception; (3) abstention under the *Younger* abstention doctrine; (4) Dr. Fyfe and the Columbine Counseling Center are absolutely immune from all of the plaintiff's claims; (5) plaintiff's § 1983 claim fails because Dr. Fyfe was not a state actor and did not conspire with any state actor; and (6) plaintiff's § 1983 claim fails because Dr. Fyfe is entitled to qualified immunity. The Fyfe defendants filed a Supplement to Their Motion to Dismiss (Docket No. 67) in which they advised the court of a March 9, 2006, decision by the Colorado Court of Appeals concerning the fee

dispute in the underlying domestic relations case.  Plaintiff then filed a "Citation of

Supplemental Authority/Supplement to Response to Fyfe Defendants' Motion to

Dismiss." (Docket No. 69).

Next is the Motion to Dismiss Plaintiff's First Amended Complaint (Docket No.

38) in which defendants Madeline Wilson and her law office move for dismissal of the

Amended Complaint on the following grounds: (1) *res judicata* bars the plaintiff from

relitigating claims he asserted in the previously-dismissed state actions; (2) Wilson is

shielded from the plaintiff's claims by absolute privilege; (3) Wilson is not liable for

defendant Ryan's alleged tortious conduct; (4) plaintiff's § 1985 claims fail to

adequately plead a conspiracy; (5) plaintiff's § 1983 claim should be dismissed since

Wilson is not a state actor; (6) the pleading fails to provide a "short and plain

statement" required by Fed. R. Civ. P. 8(a)(2); (7) plaintiff's failure to comply with § 13-

2--602, C.R.S. (which requires the filing of a certificate of review in certain cases), bars

plaintiff's claims against Wilson; (8) plaintiff failed to file a cost bond; (9) plaintiff's

breach of contract claims fail because Wilson was not a party to the agreements; and

(10) lack of jurisdiction based upon the *Rooker-Feldman* doctrine, abstention under the

domestic relations exception, and the abstention under the *Younger* doctrine (they join

in the arguments made by defendants Ryan and Fyfe).

Also before the court is the State Defendants' Motion to Dismiss (Docket Nos. 39

and 42) in which "the state defendants" (defendants Arcilise, Culberson-Smith,

Gleason, Pryor, Evans, Jefferson County Combined Court, and Attorney General

Suthers) seek dismissal on the following grounds: (1) the *Rooker-Feldman* doctrine

bars the plaintiff's claims, (2) the *Younger* abstention doctrine bars the plaintiff's claims; (3) the Eleventh Amendment bars the assertions of subject matter jurisdiction over the plaintiff's claims; (4) the state defendants are immune from the plaintiff's claims under the doctrine of absolute judicial immunity; (5) defendants Arcilise, Culberson-Smith, and Gleason are entitled to qualified immunity; (6) the twelfth and thirteenth claims for relief alleging violations of 42 U.S.C. § 1985(3) must be dismissed for failure to state a claim; (7) Gleason and Culberson-Smith are entitled to absolute prosecutorial immunity; (8) the fourteenth claim for relief must be dismissed because there is no private right of action for violation of the Colorado Rules of Attorney Discipline; (9) plaintiff has failed to allege a cognizable claim against Suthers or the Jefferson County Combined Court; and (10) plaintiff's § 1985(3) claims must be dismissed for failure to state a claim because he has not alleged a conspiracy motivated by racial animus.

On December 6, 2005, which was the day before a Rule 16 Scheduling Conference and a motion hearing were to be held before this court, the plaintiff filed an Emergency Forthwith Motion for Preliminary Injunction and for Sanctions (Docket No. 52).

The court has painstakingly reviewed the motions, responses thereto, replies, and supplements.  In addition, the court has considered applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed makes the following findings, conclusions, and recommendations.  In so doing, the court has found it unnecessary to address each and every argument for dismissal of this action.  The court finds that it lacks subject matter jurisdiction over plaintiff's claims against Wilson

that are based on the restraining orders she obtained, that the court should abstain

from hearing the remaining claims except those against defendants Gleason and

Culberson-Smith, and that the plaintiff lacks standing to bring his claims against

defendants Gleason and Culberson-Smith.  In addition, in the report and

recommendation below, the court has addressed a few alternative bases for dismissal

of some of the plaintiff's claims.  Finally, the court recommends that plaintiff's

Emergency Forthwith Motion for Preliminary Injunction and for Sanctions be denied.

**Standard of Review**

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts are to be strictly construed.  *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms.  First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact.  *See id.* at 1003.  A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d

14

1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A case should not be dismissed for failure to state a claim unless the court determines beyond doubt that plaintiff can prove no set of facts which entitles him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

**Rule 8 of the Federal Rules of Civil Procedure**

Defendants Ryan and Wilson assert that the plaintiff's pleading violates Rule 8 of the Federal Rules of Civil Procedure.  Pursuant to Rule 8(a)(2), a Complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2).  Furthermore, Rule 8(e)(1) provides in pertinent part that

"[e]ach averment of a pleading shall be simple, concise, and direct. . . ."  Fed. R. Civ. P.

8(e)(1).  Plaintiff's Amended Complaint is 98 pages long, with 438 enumerated

paragraphs (not including the 29 enumerated paragraphs concerning plaintiff's prayer

for relief), 60 footnotes, and approximately 75 additional single-spaced pages which

make up 8 appendices containing even more averments and footnotes which the

Amended Complaint incorporates by reference.

The court has spent considerable time very carefully trodding through the

plaintiff's rambling, prolix amended pleading, including the appendices, and concludes

that it does not comply with the requirements of Rule 8 quoted above.  This conclusion

is not based merely upon the sheer length of the pleading, although the court does not

agree with the plaintiff's contention that the Complaint's "size is in direct proportion to

the number of defendants and the magnitude of defendants' fraud."  (Docket No. 27 at

5).

The court notes that the plaintiff has stated in one of his responses that "[i]f the

Court were to find any deficiencies in the Complaint, Plaintiff requests the Court grant

leave to amend."  (Docket No. 27 at 7).  In view of this request, notwithstanding the

pleading's non-compliance with Rule 8, and in the interest of judicial economy, the

court has reviewed the Amended Complaint and the various alternative arguments for

dismissal, and recommends dismissal of this action for the reasons stated below.

**Subject Matter Jurisdiction and Abstention**

*Rooker-Feldman* Doctrine.  Defendants assert that the plaintiff's claims should

16

be dismissed for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.[3]  The court notes that in <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280 (2005), the U.S. Supreme Court recently reduced the scope of that doctrine "to the narrow set of cases out of which it was born." <u>Guttman v. Khalsa</u>, 446 F.3d 1027, 1031-32 (10th Cir. 2006).  More specifically, prior to <u>Exxon Mobil</u>, the Tenth Circuit, like other courts, adopted a rule that the doctrine applied to state court decisions that were not final.  <u>See</u> <u>Kenmen Eng'g v. City of Union</u>, 314 F.3d 468, 473 (10th Cir. 2002).  Now, however, "[u]nder *Exxon Mobil*, *Rooker-Feldman* applies only to suits filed after state proceedings are final." <u>Guttman</u>, 446 F.3d at 1032.  In <u>Guttman</u>, the Tenth Circuit noted favorably in a footnote that

> [t]he First Circuit helpfully explained the situations where a judgment would be considered final for *Rooker-Feldman* purposes: (1) "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved"; (2) "if the state action has reached a point where neither party seeks further action", or (3) "if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated."

<u>Id.</u> at 1032 n.2 (quoting <u>Federacion d Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico</u>, 410 F.3d 17, 24 (1st Cir. 2005)).

Despite this narrowing of the doctrine, it is still the case that under this doctrine "[f]ederal district courts do not have jurisdiction to review state court judgments or claims inextricably intertwined with them." <u>Bear v. Patton</u>, 451 F.3d 639, 640 (10th Cir.

---

[3]The *Rooker-Feldman* doctrine stems from the decisions in <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983), and <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923).

2006) (citing Guttman, 446 F.3d at 1031).  "A federal claim is inextricably intertwined

with a state-court judgment if that judgment 'caused, actually and proximately, the injury

for which the federal-court plaintiff seeks redress.'"  Id. at 432 (citation omitted).

    In the instant case, it is readily apparent that despite plaintiff's attempts at artful

pleading, virtually all of his claims are inextricably intertwined with his domestic case in

Jeffco District Court.  Plaintiff is very clearly extremely disgruntled about numerous

adverse rulings issued in that case, as well as allegations and statements made in

various pleadings, motions, and reports, and his purported treatment by the various

defendants during the continuing course of that case.  Despite plaintiff's protestations

to the contrary, this court agrees with defendant Ryan that plaintiff "simply wants this

Court to reevaluate issues and evidence presented and addressed in the state court

proceedings."  (Docket No. 25 at 9).  "Stripped of its verbiage, this is no more- and no

less-than a domestic relations case."  Short v. Short, 730 F. Supp. 1037, 1040 (D. Colo.

1990) (quoting Bacon v. Bacon, 365 F. Supp. 1019, 1018 (D. Or. 1973)).

    It is also apparent, however, that the Jeffco domestic case is not final.  While

plaintiff claims in his Amended Complaint that he "does not request this Court to

interfere with any ongoing state proceedings" (Docket No. 22 at 2, ¶ 6), he admits in

that same pleading that there is a pending recusal motion[4] and that there are pending

state appeals.  (Docket No. 22 at 2-3, ¶ 6).  In addition, in at least one of his

Responses, plaintiff states that he initiated this action before the state court

_____

        [4]Plaintiff has also noted in various Responses that his motion to recuse Judge
Tidball is still pending.

proceedings were completed. (See Docket No. 32 at 9). On the other hand, in response to *Younger* abstention arguments, in that very same Response the plaintiff states that he "has repeatedly alleged through his Complaint and in his responsive pleadings that there are [no ongoing domestic relations proceedings] and could be no ongoing domestic relations proceedings." (Docket No. 32 at 12). He does note, though in that Response, that "[t]here are two pending appeals: the first one is a fee issue, addressing the state trial court judge's May 4th 2004 *ex post facto* order approving of Fyfe's April 2004 violation of the August 2003 Order of Appointment; the second deals with the denial of Rule 60(b) motion to disqualify Fyfe as special advocate. . . . The subject of the appeals is not the custody of the minor child or the State's right to act in its role of *parens patriae.* . . ." (Docket No. 32 at 13).

This court thus finds that pursuant to the *Rooker-Feldman* doctrine, this court does have subject matter jurisdiction over virtually all of the plaintiff's claims raised in this action, namely all claims except those in the Amended Complaint against Wilson concerning her obtainment of four restraining orders against the plaintiff. Those restraining order matters were final when this action was commenced. It is recommended that plaintiff's claims against Wilson based on those restraining orders be dismissed for lack of subject matter jurisdiction.[5]

--------------------------------------------------

[5]It is not clear from the Amended Complaint whether the plaintiff is basing any of his claims against Ryan and Wilson on his civil commitment in 2000 or whether his commitment is mentioned in his pleading merely as background information. To the extent plaintiff is basing a claim or claims on such commitment, any such claims are barred by res judicata or collateral estoppel as it was one of the bases for a state court action plaintiff brought against Ryan, Wilson, and others and was the subject of a settlement with Ryan and Wilson. See, e.g., Exhibits to Docket No. 38.

19

Abstention.  Defendants alternatively assert that the plaintiff's claims are barred by the abstention doctrine of Younger v. Harris, 401 U.S. 37 (1971).  "*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief - such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings - when such relief could adequately be sought before the state court."  Amanatullah v. Colorado Bd. of Med. Exam'rs, 187 F.3d 1160, 1163 (10th Cir. 1999).  The Tenth Circuit has stated with respect to abstention that:

> [i]n determining whether *Younger* abstention is appropriate, a court considers whether: "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." . . .  Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain. . . .

Crown Point I, LLC v. Intermountain Rural Elec. Ass'n, 319 F.3d 1211, 1215 (10th Cir. 2003) (citations omitted).

A review of the Amended Complaint itself reveals that state judicial proceedings are ongoing in this case.  Those proceedings concern domestic relations issues, namely the plaintiff's and his ex-wife's custody and parenting time with their daughter. While plaintiff seems to assert that there is no on-going case because of the suspension of the proceedings due to his recusal motion, such a motion does not terminate the state court's jurisdiction over the case.  Furthermore, the state court possesses continuing jurisdiction over its decrees, and it has the requisite expertise to

oversee and modify its rulings when appropriate.  See Short v. Short, 730 F. Supp. at

1040.  In addition, the state has a very strong interest in such domestic matters as they

are traditionally of state concern.  See Morrow v. Winslow, 94 F.3d 1386, 1397 (10th

Cir. 1996) ("The Supreme Court has made emphatically clear its recognition that

'[f]amily relations are a traditional area of state concern.'") (quoting Moore v. Sims, 442

U.S. 415, 435 (1979)); Steffens v. Steffens, 955 F. Supp. 101, 104 (D. Colo. 1997)

(domestic relations is "an area of important state interests").  The state court provides

an adequate forum to hear such claims,[6] and this court agrees that Younger abstention

is appropriate in this case with respect to all of the plaintiff's remaining claims against

all defendants except defendants Gleason and Culberson-Smith.

Alternatively, the court agrees with defendants that abstention is warranted with

---

[6]Such claims include those against the Fyfe defendants.  In the First Amended Complaint, plaintiff complains of the fees Fyfe has charged him and asserts that Fyfe did not "fulfill the obligatory tasks of a SA investigation."  (Docket No. 22-2 at 4).  More specifically, Fyfe allegedly did not "(1) perform a child-parent interaction evaluation; (2) perform a personal interview with Plaintiff; (3) perform an interview with Plaintiff's spouse (the child's step-mother); (4) conduct a meaningful interview of references, witnesses or mental health care providers; or (5) provide an indication that the evidentiary document for, which Fyfe had charged additional fees had actually been reviewed or considered."  (Docket No. 22-2 at 4).  The Fyfe defendants correctly note that these matters are delegated to the state court.  See § 14-10-116.5, C.R.S. (jurisdiction to appoint a Special Advocate, to define the subject matter and scope of the Special Advocate's duties, and to enter orders concerning the Special Advocate's fees).  In fact, in the plaintiff's domestic case, plaintiff admittedly filed several motions asking to disqualify Fyfe on the grounds of bias and unethical conduct. (See Docket No. 22-7, ¶ 27).   Furthermore, Judge Tidball issued a ruling with respect to Fyfe's fees, which plaintiff appealed.  On March 9, 2006, the Colorado Court of Appeals issued an opinion on the fee dispute, remanding "with directions that the sum shall be allocated equally between the parties pursuant to the August 2003 order appointing the special advocate."  (Docket No. 67-2 at 10).  Plaintiff is now seeking to relitigate the rulings issued on these matters.  This court should abstain from exercising jurisdiction.

21

respect to the plaintiff's state law claims pursuant to the domestic relations exception to

diversity jurisdiction.[7]  See Ankenbrandt v. Richards, 504 U.S. 689 (1992); Wigington v.

McCarthy, 1997 WL 527636 (10th Cir. Aug. 27, 1997); Short v. Short, 730 F. Supp.

1037 (D. Colo. 1990); Casida v. Casida, 580 F. Supp. 857 (D. Colo. 1984).

**Claims Against Defendants Gleason and Culberson-Smith**

Plaintiff complains that defendants Gleason (the Attorney Regulation Counsel)

and Culberson-Smith (the attorney from that office who allegedly received the plaintiff's

complaint regarding Wilson) did not investigate and prosecute Wilson following the

plaintiff's submission of numerous complaints.  He claims violations of 42 U.S.C. §§

1983, 1985(3), and 1986 and Colo. R. Civ. P. 251.1, 251.11, and 251.12, and

challenges the constitutionality of Colo. R. Civ. P. 251.9.

Although not addressed by defendants, this court finds that the plaintiff does not

have standing to bring such claims against defendants Gleason and Culberson-Smith.

---

[7]The party bringing suit in federal court bears the burden to demonstrate that the court has jurisdiction.  In this case, it is not readily apparent whether there is diversity because the record here does not clearly reflect the domiciles of all of the parties. Plaintiff merely states in his First Amended Complaint that he "is not a resident of Colorado, whereas Defendant Ryan is now domiciled in Texas and all other herein named defendants are domiciled in Colorado." (Docket No. 22 at 7, ¶ 24).  While plaintiff states in a footnote that his "domicile in Colorado and Texas ended in January 2001 and September 1994, respectively," Docket No. 22 at 7 n.5, he does not specifically aver where he is domiciled.  The address given on his Amended Complaint apparently is a mail box service.  In his final three paragraphs of his amended pleading, plaintiff asks the court exclude his "home residence and any personal information regarding Plaintiff's spouse . . . from any and all defendants' discovery or, in the alternative, subject to *in camera* review only," apparently based on his belief or fear that defendants would interfere with his wife's permanent residency application, initiate some action to take away his newborn child, and re-invoke the civil commitment process.  (Docket No. 22 at 97).

22

Doyle v. Oklahoma Bar Ass'n, 998 F.2d 1559 (10th Cir. 1993).  The plaintiff in Doyle

raised almost identical claims against the defendants as those raised by the plaintiff

here against Gleason and Culberson-Smith.  "Doyle brought [his] action after he

became dissatisfied with the way Bar counsel and the [Oklahoma Professional

Responsibility Commission ("PRC")] handled a grievance he had filed with the Bar

against his ex-wife's lawyer.  His complaint [was] based on the theory that he [had]

federal constitutional rights to have a lawyer investigated after a grievance is filed . . .

to have the defendants comply with the Oklahoma Supreme Court's Rules Governing

Disciplinary Proceedings, and to have defendants monitor lawyers so they will not

make material misrepresentations in court."  Id. at 1562.  As a threshold issue, the

Tenth Circuit found that the plaintiff lacked standing.  The court stated:

> Essentially, he wanted a lawyer disciplined or at least greatly
> inconvenienced at the state level, and to use the result to somehow
> mount a collateral attack on a state court judgment.  His complaint for
> damages rests on a core assertion that he was unconstitutionally
> deprived of these aims. . . . [T]he PRC acts in a prosecutorial capacity. . .
> . As such it has full discretion to investigate, reinvestigate, weigh and
> reweigh actual or likely evidence, charge or not charge, and to reconsider
> and reverse or modify any decisions with respect to any of the foregoing
> at any time during the process. . . .  The sole discretion whether or not to
> file a formal complaint against a lawyer rests with the prosecutor, the
> PRC. . . .
>
> The United States Supreme Court has made it clear that "a private
> citizen lacks a judicially cognizable interest in the prosecution or
> nonprosecution of another." . . .  Accordingly, "a citizen lacks standing to
> contest the policies of the prosecuting authority when he himself is neither
> prosecuted nor threatened with prosecution." . . .
> . . .
>
> The fact is that the only one who stands to suffer direct injury in a
> disciplinary proceedings is the lawyer involved. [Plaintiff] has no more

23

standing to insert himself substantively into a license-based discipline system than he has to compel the *issuance* of a license.

We hold that [plaintiff] lacks standing to bring this appeal and this action.

Id. at 1566-67 (citations omitted).

In the instant case, Colorado's Attorney Regulation Counsel, like Oklahoma's PRC, have full discretion to determine whether to proceed with an investigation and whether to charge. See Colo. R. Civ. P. 251.9(b). Like the plaintiff in Doyle, plaintiff here has no standing to bring this suit regarding the nonprosecution of the complaints he submitted to Attorney Regulation Counsel.

In addition, as in Doyle, there is an alternate basis for dismissal as against the two state regulation counsel, namely, plaintiff has not alleged the deprivation of any right under the Constitution of the United States. Doyle, 988 F.2d at 1571. These two defendants made such an assertion in their qualified immunity argument. This court finds that the plaintiff has not been deprived of any liberty or property interest as a result of Gleason and Culberson-Smith not investigating and processing plaintiff's numerous complaints against Wilson. See Saier v. State Bar of Michigan, 293 F.2d 756 (6th Cir. 1961). In this regard, the Tenth Circuit found in Doyle:

Fairly analyzed, Doyle's argument is that the Federal Constitution imposes a duty on the defendants to do various things *for* him (investigate and process his grievance, somehow help him alter state court judgments by filing a formal disciplinary complaint against a lawyer, prevent perjurious statements in court, and so on), or *to* someone else (investigate and/or commence disciplinary proceedings against a lawyer). Substantive due process rights do not remotely relate to such claims. . . .

Substantive due process rights do not encompass a right to compel a state to do something *for* someone not under some form of custody or

24

> restraint, and certainly not to compel the type of actions envisioned in
> Doyle's complaint. . . .  It hardly merits mentioning because it is so
> obvious, that the same is true with respect to a claim that the state ought
> to do something *to* someone else. . . .  Doyle states no substantive due
> process claim. . . .

Doyle, 988 F.2d at 1568-69 (citations and footnote omitted).  The court also found that

Doyle failed to state a procedural due process claim.  Id. at 1569-70.  In fact, the court

found Doyle's case to be frivolous.  Id. at 1571.

As yet another alternate holding, this court finds that defendants Gleason and

Culberson-Smith correctly assert that they are entitled to prosecutorial immunity from

damages liability.  "[B]ar officials charged with the duties of investigating, drawing up,

and presenting cases involving attorney discipline enjoy absolute immunity from

damage claims for such functions."  Clulow v. Oklahoma, 700 F.2d 1291, 1298 (10th Cir.

1983), overruled on other grounds, Garcia v. Wilson 731 F.2d 640 (10th Cir. 1984);

Bannister v. Colorado Supreme Court Disciplinary Counsel, 856 P.2d 79, 81 (Ct. App.

1993).  A prosecutor is absolutely immune from liability for the decision to prosecute,

Hartman v. Moore, 126 S. Ct. 1695, 1704 (2006), or to not prosecute, Hammond v.

Bales, 843 F.2d 1320, 1321 (10th Cir. 1988); Dohaish v. Tooley, 670 F.2d 934, 938 (10th

Cir. 1982).  Furthermore, "there is no question in this circuit that prosecutors are

absolutely immune from liability for allegedly failing to conduct an adequate,

independent investigation of matters referred to them for prosecution.'"  Scott v. Hern,

216 F.3d 897, 909 (10th Cir. 2000).  The "immunized conduct include [their]

investigation, or lack thereof . . . ."  Id. (emphasis added).  See Brodnicki v. City of

Omaha, 75 F.3d 1261, 1268 (8th Cir. 1996) ("The decisions relating to the initiation and

dismissal of cases are at the very heart of a prosecutor's function as an advocate for

the state, and absolute immunity thus attaches to those decisions.").

Furthermore, to the extent plaintiff may be bringing any state law claims against

these two defendants, Rule 251.32(e) of the Colorado Rules of Civil Procedure

expressly provides that "Regulation Counsel and staff . . . shall be immune from suit for

all conduct in the course of their official duties."  Colo. R. Civ. P. 251.32(e).

Based upon the findings above, this court recommends dismissal of all claims

against state defendants Gleason and Culberson-Smith.

## State Action and Conspiracy Claims

"A prerequisite for any relief under [42 U.S.C. §] 1983 is that the defendant has

acted under color of state law."  Barnard v. Young, 720 F.2d 1188, 1188-89 (10th Cir.

1983).  This court agrees with defendants Ryan, Wilson, and Fyfe that the plaintiff has

failed to state a claim against them with respect to his claims under §1983 because

they are not state actors.  Ryan is the plaintiff's ex-wife and mother of their daughter.

Wilson is Ryan's attorney.  "The conduct of an attorney acting in [her] professional

capacity while representing [her] client does not constitute action under color of state

law for the purposes of § 1983."  Beedle v. Wilson, 422 F.3d 1059, 1073 (10th Cir.

2005).  Fyfe is a private psychologist who was appointed by Judge Tidball as a Special

Advocate, and Special Advocates are not state actors.  Himmler v. Brodbeck, 2005 WL

2450156, *1 (D. Colo. Sept. 30, 2005) (Matsch, S. J.).

"As [] private citizen[s], [defendants Ryan, Wilson, and Fyfe] can be held liable

under § 1983 only if [they were] 'willful participant[s] in joint action with the State or its

agents.'"  Beedle v. Wilson, 422 F.3d at 1071.  "When a plaintiff in a § 1983 action

attempts to assert the necessary 'state action' by implicating state officials or judges in

a conspiracy with private defendants, mere conclusory allegations with no supporting

factual averments are insufficient; the pleadings must specifically present facts tending

to show agreement and concerted action. . . .  The standard is even stricter where the

state officials allegedly involved in the conspiracy are immune from suit, as [is] the

state court judge[] here."  Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir.

1983).

Plaintiff states in his amended pleading that to support his conspiracy claims, he

"will not allege an express agreement, but rather will set forth the facts tending to show

agreement and concerted action.  The agreements as to the conspiracies may be

inferred from the circumstances, including, but not limited to:  the evidence in the

Record; comments, statements and prior actions of the defendant parties; the repetitive

pattern of conduct; and the fact that the acts are not indicative of spontaneity, but

rather of cool deliberation from which a prior agreement should be inferred."  (Docket

No. 22 at 5, ¶ 14).  This court finds, however, that the plaintiff's pleading merely

contains conclusory allegations of conspiracies among Ryan, Wilson, Fyfe, Judge

Tidball, Division Clerk Archilese, and Attorney Regulation Counsel.  Despite plaintiff's

protestations to the contrary, he has not specifically presented any facts tending to

show agreement and concerted action.  At best, he has merely alleged rank

speculation and innuendoes, which are not sufficient to state a claim upon which relief

may be granted.  For this same reason, plaintiff's claims pursuant to 42 U.S.C. §

1985(3) also fail,[8] see Grisson v. City & County of Denver, 2006 WL 2037997 (D. Colo.

July 18, 2006) ("Vague and conclusory allegations of a conspiracy are not sufficient

when unsupported by a description of particular over acts."), and since a § 1986 claim

is premised upon the existence of a valid § 1985 claim, plaintiff's § 1986 claim also

fails.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir. 1990);

Grisson v. City & County of Denver, 2006 WL 2037997 (D. Colo. July 18, 2006).

## ADA and Rehabilitation Act Claims

Title II of the Americans with Disabilities Act provides, in relevant part, that "no

qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a

public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

To prove a violation of Title II, a party must therefore establish: (1) that he is a

"qualified individual" with a disability; (2) that he was excluded from participation in a

public entity's services, programs or activities or was otherwise discriminated against

by a public entity; and (3) that such exclusion, denial of benefits, or discrimination was

due to his disability.  Barber ex rel. Barber v. Colorado, Dept. of Revenue, 2005 WL

2657885, *1 (D. Colo. Oct. 17, 2005).  Section 504 of the Rehabilitation Act imposes

---

[8]Plaintiff here has also not alleged that the purported conspiracies were
motivated by some class-based invidiously discriminatory animus.  Tilton v.
Richardson, 6 F.3d 683, 686 (10th Cir. 1993) ("The other 'class-based animus' language
of [§ 1985(3)'s] requirment has been narrowly construed . . . . [T]he Supreme Court has
held that 'it is a close question whether § 1985(3) was intended to reach any class-
based animus other than animus against Negroes and those who championed their
cause.'").  Rather, he alleges there were various conspiracies due to his pro se status,
his purported mental illness, and his religion (being an atheist).  Such allegations are
insufficient to state a § 1985(3) claim.

identical obligations.  Id.  Under the regulations, the term "disability" includes "[a] . . .

mental impairment that substantially limits one or more of the major life activities of

such individual . . . ,"  29 C.F.R. § 1630.2(g)(1), and "mental impairment" includes

"[a]ny mental or psychological disorder, such as . . . emotional or mental illness . . . ."

29 C.F.R. § 1630.2(h) (2001).

Plaintiff asserts that he has been "variously diagnosed, by different psychiatrists

over the past five years, with one or more of the following, in different concurrent

combinations: bi-polar disorder with 'mixed features,' clinical depression, cyclothamic

personality disorder, narcissistic personality disorder, 'adult ADHD,' and "Post-

traumatic stress syndrome (PTSD).'" (Docket No. 22-4 at 1, ¶ 1).  He further asserts

that "[a]t all times relevant, [he] has been regarded as gravely disabled by all

Defendants, including the State Defendants."  (Docket No. 22-4, at 2, ¶ 4).

In his pleading, plaintiff states that "[i]n keeping with Fed.R.Civ.P. 8(a), [he] will

not here produce prolix evidentiary details, incidents, examples and chronology" of his

claims of ADA violations, denial of access to the courts, disparate treatment and

impact, including procedural due process deprivations, relative to state court processes

and policies."  (Docket No. 22 at 10, ¶ 34).  Plaintiff then proceeds with 25 rambling

paragraphs which include allegations about perceived mistreatment by the state trial

and appellate courts and very general allegations about various wrongs to "individuals

(including plaintiff)."   For example, plaintiff complains about the trial court's "retaliating"

against him by issuing an order prohibiting his wife from calling the division/chambers

after plaintiff sent a letter to the division clerk, defendant Arcilise, complaining about

how Arcilise treated his wife on the telephone; "punishing" him by awarding attorney

fees to his ex-wife; "fining" him for filing a motion (Docket No. 22 at 10, ¶ 36); depriving

him of "the use of established adjudicatory procedures, such as discovery" (Docket No.

22 at 12, ¶ 42); and refusing to decide a Motion for Substitution of Judge (Docket No.

22 at 11, ¶ 39).

Plaintiff's rambling pleading also talks about the state court having "adopted a

practice of selectively waiving and conferring jurisdiction with no relation to any event

of jurisdictional significance, thereby foreclosing Plaintiff's access to the court" (Docket

No. 22 at 11, ¶ 38).  In addition, he claims that "[p]rior to the filing of the August '04

recusal motion, all of Plaintiff's *pro se* motions were consciously delayed, disregarded

(ignored), axiomatically rubber-stamp denied (without consideration or reviewable

findings) or denied on the basis of intentionally erroneous/fabricated or narrow

technicalities by the state trial court.  Indeed, the state trial court has failed to

adjudicate claims that were properly presented by Plaintiff, thereby depriving him of any

means to defend substantial liberty interests, redeem his property interests and rights

and confront his accusers."  (Docket No. 22 at 11, ¶ 41) (footnote omitted).  In addition,

he asserts that

> [t]he Colorado trial and appellate courts have issued decisions (in
> unpublished opinions), which have effectively created a rebuttable
> presumption that persons with a psychiatric diagnosis are an imminent
> danger to a minor child, which presumption does not exist in the Colorado
> statutes.  While the aforementioned decisions, themselves, cannot be
> "reviewed" here in contravention of *Rooker-Feldman*, they are indicative
> of underlying policies of discriminatory animus and lack of training that
> the ADA was enacted to resolve and, thereby evidence that this aspect,
> too, of the state judicial system is not in compliance with the ADA

30

mandate.

(Docket No. 22 at 12, ¶ 43) (footnote omitted).

With regard to the state appellate court, plaintiff further complains that such

court "has disregarded specific and pivotal issues raised on appeal by Plaintiff, without

either acknowledging that Plaintiff-Appellant had presented them or disposing them

under some legal theory . . . ." and that the court took eight months to dispose of his

applications for relief and did so only after his appellate counsel entered an

appearance and that "the real purpose for this delay was to withhold justice and deny

meaningful access in an attempt to coerce Plaintiff to retain counsel, in violation of his .

. . right to participate fully in the proceedings . . . , and which was a practice based on

an invidious discriminatory purpose."  (Docket No. 22 at 12-13, ¶¶ 44, 45).

Plaintiff's allegations in his appendices attached to his Amended Complaint are

not much more enlightening with regard to specific alleged ADA and Rehabilitation Act

violations.  For example, he asserts therein:

> During the past five years, the state divorce court adopted Ryan &
> Wilson's approach by selectively applying or modifying court processes in
> a prejudicial and discriminatory (rather than accommodating) manner on
> the basis of disability.  In addition, Plaintiff has been subjected to the
> State court's gender bias in domestic matters (despite the purported
> abolition of the "Tender Years Doctrine") and general disfavor of *pro se*
> litigants.  Plaintiff has been subjected to both substantive and procedural
> due process deprivations, which have been the result of both disparate
> impact and disparate treatment by the state courts and state agencies
> without any articulated rational basis in a legitimate state interest.  The
> policies and practices of the state courts have denied Plaintiff meaningful
> access to the courts and bear the obvious earmarks of an, "abusive
> litigant order," without actually issuing any appealable Order or requisite
> findings (thus, evading review).  The state courts have all but excluded
> Plaintiff from motions practice and the use of established adjudicatory

procedures including discovery, peremptory hearings (*e.g.*, on matters of attorneys fees or motions to disqualify counsel or special advocate for impropriety) and the formal process for challenging the constitutionality of a statute in the appellate court.  The State trial judge has avoided ruling on a pending Motion for Substitution of Judge, which, under Colorado law, has the effect of suspending the proceedings indefinitely.  The trial judge has also selectively waived or conferred jurisdiction, sometimes within just a few weeks of each other, in order to hear matters that she desired, or to not hear other matters that she did not desire.

The state courts have denied Plaintiff his right to be present at trial to present evidence on his behalf (by reason of his mental health treatment) and conducted the trial/hearing without him, over his objection.  The State courts have impliedly held that the mere existence of a mental illness diagnosis creates a rebuttable presumption of imminent endangerment to a minor child.  The State court has even awarded attorney fees to the opposing party, in part, <u>because of Plaintiff's mental health</u> and his *pro se* status.  Most recently, the State court has engaged in retaliation for Plaintiff's filing of a complaint letter (an exercise of First Amendment protected speech) and has also ignored Plaintiff's request for a "reasonable accommodation," under Title II of the ADA.

The States's regulatory agencies have refused to exercise jurisdiction over state court processes and buildings to enforce the Colorado Supreme Court's and federal ADA anti-disability-discrimination mandates. . . .

(Docket No. 22-2 at 6).

Plaintiff does claim in his pleading that the trial court denied his motion appear by telephone for a hearing on one occasion on December 3, 2004.  (Docket No. 22 at 8, n. 27).  Plaintiff allegedly subsequently wrote to defendant Robert Evans, the ADA Coordinator for the First Judicial District (Jeffco) on January 19 (by e-mail) and 26 (by mail), 2005.  Plaintiff gives no specifics about the content of his e-mails.  He never specifies what reasonable accommodation(s) he was seeking.  Instead, he merely claims that his correspondence "established the limitations of his disability and

32

asserted the need for a reasonable accommodation as contemplated by Chief Justice

Directive 04-07." (Docket No. 22 at 9, ¶ 29). Defendant Evans, however, allegedly

"disregarded the request for reasonable accommodation." Plaintiff asserts that

> The Record fairly supports Plaintiff's proposition that the requested
> accommodation would have ameliorated the aggravation of Plaintiff's
> symptoms brought on by disputatious court appearances, which impair his
> ability to maintain decorum, focus on or contemplate the issues at bar and
> to communicate effectively, all of which are essential to participation in
> orderly court proceedings.

(Docket No. 22 at 9, ¶ 32). Plaintiff further contends that

> [o]ver these past five years [December 1999 to the present], Plaintiff's
> access to the state courts has been inadequate and ineffective as a direct
> and proximate result of both official and private actions, directly
> attributable to perceptions of Plaintiff's disability and the stigma
> surrounding such disabilities. These claims include both Equal Protection
> and Due Process considerations.

(Docket No. 22 at 10, ¶ 35).

This court finds that the plaintiff has failed to state an ADA or Rehabilitation Act

Claim. Simply put, despite all of the plaintiff's verbiage and attempted artful pleading,

he has not adequately alleged that there has been any impediment to his access to the

courts by reason of a disability. See Kline v. Hall, 2005 WL 1275092 (10th Cir. May 31,

2005). Instead, he is simply dissatisfied with rulings issued by the trial and appellate

courts.

**Immunity of Defendant Arcilise**

Defendant Arcilise is Judge Tidball's Division Clerk. Plaintiff contends that he

"has been repeatedly prejudiced by Arcilise's conduct, which has both resulted in

unduly influencing the outcome of judgments, and irrespective of judgments, has

effectively made the entire division off-limits and inaccessible to any and all parties

associated with Plaintiff, including Plaintiff's wife." (Docket No. 22-5 at 1).  More

specifically, plaintiff states that

> [t]he first incident occurred on May 31st 2000 at the Permanent Orders
> hearing (trial).  Defendant Arcilise, apparently, had been complaining to
> Judge Tidball about Plaintiff's Communications to her.  Rather than
> remain impartial, Judge Tidball retaliated on behalf of Arcilise for
> Plaintiff's petitioning activities and used her complaint as a basis for an
> attorney fee award for Defendant Ryan.  Judge Tidball stated:
>
>> And the Court would note, and take judicial notice of
>> the fact that [Mr. Harrington] has also made numerous and
>> lengthy telephone calls to the Court, left messages here,
>> called over and over again, and taken a huge amount of
>> time of the staff of the Court, which further supports the
>> award of attorney fees in this case.

(Docket No. 22-5 at 1).  In addition, plaintiff states that "[o]n June 6th 2000, based on

Plaintiff's angry outbursts, Judge Tidball entered an order: 'One the court's own motion,

the court hereby extends its May 2000 order such that Respondent is ordered not to

appear in person at the division or to contact this division by telephone for any reason.

All communications from Respondent shall be in writing.'" (Docket No. 22-5 at 1).

Plaintiff then admits that because of that order, on some occasions he has designated

someone to call the division/chambers on his behalf.  On one occasion, he had a co-

worker call and read off of a script prepared by the plaintiff, and Arcilise allegedly

refused to provide the information requested "and, instead, became belligerent without

cause." (Docket No. 22-5 at 2).  Later that same month, plaintiff had his wife call "to

obtain basic case status information." (Docket No. 22-5 at 2).  Plaintiff apparently did

not like how Arcilise treated his wife during that call, so he wrote a two-page letter to

34

Arcilise complaining "of disparate treatment (of Plaintiff and those connected with him) because of Plaintiff's disability, equal protection violations, denial of effective access to the court, *inter alia*.  Plaintiff 'warned' Arcilise not to take any action that might be construed as retaliation for the exercise of protected speech (the submission of the complaint letter) and indicated that if Plaintiff's wife were to call again seeking information, Arcilise should provide her with the information with courtesy."  (Docket No. 22-5 at 3).  Plaintiff then asserts that he "is informed and believes and, thereon alleges that Defendant Arcilise interpreted the letter as a 'dare,' and requested that Judge Tidball retaliate against Plaintiff on her behalf.  The following day, September 16th 2004, an order issued forth: '[Upon] the Court's own Motion . . . [plaintiff's wife] is not to contact this Division by telephone for any purpose."  (Docket No. 22-2 at 3) (footnote omitted).  Plaintiff contends that this order was in retaliation for the exercise of a protected petitioning activity and was void because Judge Tidball had not yet decided the pending recusal motion.

This court agrees with defendant Arcilise that she is entitled to absolute quasi-judicial immunity.  See Smith v. Erickson, 884 F.2d 1108, 1111 (8th Cir. 1989) (deputy district court clerk protected by judicial immunity from damages for civil rights violations allegedly committed in connection with the filing of a complaint and other documents); Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1390 (9th Cir. 1987) (Bankruptcy court clerks who allegedly failed to give proper counseling and notice, accepted and filed an incomplete petition, and refused to accept an amended petition had absolute quasi-judicial immunity from damages for civil rights violations as these tasks are

integral parts of the judicial process.); <u>Eades v. Sterlinske</u>, 810 F.2d 723, 726 (7th Cir. 1987) (state court clerks entitled to such immunity).  Such immunity extends to court personnel who perform "quasi-judicial" functions.  <u>Whitesel v. Sengenberger</u>, 222 F.3d 861, 867 (10th Cir. 2000).  "[I]mmunity which derives from judicial immunity may extend to persons other than a judge where performance of judicial acts or **activity as an official aid of the judge** is involved. . . .  [A]bsolute judicial immunity has been extended to non-judicial officers where their duties had an **integral relationship with the judicial process**."  <u>Id.</u> (emphasis added).  "Absolute immunity 'applies to all acts of auxiliary court personnel that are basic and integral part[s] of the judicial function.'" <u>Jackson v. Houck</u>, 2006 WL 1344807 (4th Cir. May 17, 2006) (law clerk absolutely immune) (quoting <u>Mitchell v. McBryde</u>, 944 F.2d 229, 230 (5th Cir. 1990)).  <u>See Dellenbach v. Letsinger</u>, 889 F.2d 755, 763 (7th Cir. 1989) (citing "[t]he danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks . . . and other judicial adjuncts-alleging as here a conspiracy between the adjunct and the judge," as a reason for extending judicial absolute immunity to such an adjunct); <u>Ashbrook v. Hoffman</u>, 617 F.2d 474, 476 (7th Cir. 1980) ("[A] nonjudicial officer who is delegated judicial duties in aid of the court should not be a 'lightning rod for harassing litigation' aimed at the court."); <u>Argentieri v. Clerk of Court for Judge Kmiotek</u>, 420 F. Supp.2d 162 (W.D.N.Y. 2006) (clerks were assisting judges in performing essential judicial functions when they refused to acknowledge plaintiff's motions or schedule his court proceedings).

Here, plaintiff complains that (1) Arcilise did not immediately accede to plaintiff's

36

telephonic request that she fax him a copy of a motion set for hearing within the hour,

(2) Arcilise apparently advised her Judge that plaintiff's wife (and plaintiff's co-

worker(s)) had called chambers with questions about the plaintiff's case after the Judge

had issued an order prohibiting plaintiff from calling that division/chambers and

directing him to communicate only in writing, which resulted in an order prohibiting

plaintiff's wife from calling that division/chambers,[9] and (3) "Arcilise directed venomous

hostility to any person connected to the Plaintiff, who had called the division on his

behalf." (Docket No. 49 at 13).  From these alleged actions, and others, plaintiff

apparently infers that there was a conspiracy among Ryan, Wilson, and Arcilise (and

———————————————

[9]Plaintiff's Appendix G to his Amended Complaint includes purported transcripts of the telephone conversations plaintiff's wife and co-worker had with defendant Arcilise.  Despite an order by Judge Tidball that directed the plaintiff not telephone the division/chambers and instead communicate with the court in writing, plaintiff had his co-worker and wife call chambers.

In one instance, according to the affidavit of plaintiff's co-worker, at plaintiff's direction she telephoned the division/chambers "because [plaintiff] is under order not to call the court, himself" to ask questions provided to her by the plaintiff concerning whether and when there had been an order or judgment following a hearing, if a copy had been sent to the plaintiff and if so to what address, and what motions or responsive pleadings, if any, had been filed from July 2, 2003, to the time of the call on August 8, 2003.  According to the caller, Arcilise acted "confused and as if she had no clue what I was referring to."  (Docket No. 22-8 at 21-22).

Plaintiff's wife purportedly inquired about whether the Judge had ruled on a motion for recusal.  Arcilise merely responded, "Judge Tidball rules on every motion that is filed and we usually mail them to you.  And I know you receive the mail we send. What you both need to do is just wait for a few days instead of calling me.  You're calling too much.  I'm very busy and don't have time to answer these kinds of questions.  I would appreciate it if you would not call me again in the future.  Call domestic (gave phone number).  Do not call here."  She then, upon request, repeated the phone number, and asked the plaintiff's wife to "Stop calling here.  Okay?"  (Docket No. 22-8 at 31).

apparently the Judge) to frustrate and deny plaintiff meaningful access to the court

based upon various factors, i.e., his *pro se* status, his mental disability, and his being

an atheist.

Even if these acts are not considered to be basic and integral parts of the

judicial function so as to provide the Division Clerk with absolute quasi-judicial

immunity, defendant Arcilise would be entitled to qualified immunity for her actions.

There has been no showing that it was clearly established and that reasonable persons

in the defendant's position would have known that she was violating plaintiff's

constitutional rights as a result of her orderly and efficient operation of chambers by not

dropping everything else she was doing for the Judge and immediately retrieving and

faxing a copy of a motion to the plaintiff upon his demand and by advising her Judge

that the plaintiff was calling chambers excessively and then was circumventing the

court's order to contact the court only in writing by having others call on his behalf.

## Plaintiff's "Emergency Forthwith Motion for Preliminary Injunction and for Sanctions

The day before the Rule 16 Scheduling/Planning Conference was to be held

before this court, plaintiff filed an "Emergency Forthwith Motion for Preliminary

Injunction and for Sanctions" (Docket No. 52) pursuant to 28 U.S.C. § 2283.[10]

Plaintiff states in that motion that it came to his attention that day that

--------

[10]Section 2283 provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

> Defendant Wilson has taken out a fifth temporary restraining order,
> Denver County case captioned 05W1747, against Plaintiff and that she
> intends to use the December 7, 2005 motions hearing and
> planning/scheduling conference as an opportunity to serve Plaintiff with
> another of her vexatious, frivolous and duplicative suits (thereby requiring
> him to return to Denver at considerable expense to defend against the
> same).  Plaintiff does not live in Colorado and has no occasion to injure,
> molest or stalk Wilson.  Plaintiff has not threatened to injure, molest or
> stalk Wilson.  In fact, Plaintiff has had no contact, whatever, with Wilson
> since counsel entered his appearance on her behalf.  The lack of
> probable cause of Wilson's attempts to obtain permanent restraining
> orders and induce criminal prosecution are so obvious that an inference
> of malice is warranted. . . .

(Docket No. 52 at 1-2).  Plaintiff claims Wilson's purpose is to retaliate against him for

filing the instant action, to harass him, to prevent him from engaging in further First

Amendment protected information gathering activities, and to create a *Younger*

abstention bar to preclude his recovery on the claims against her in this case.  (Docket

No. 52 at 2).  Plaintiff seeks the following relief in his motion:

> an emergency injunction enjoining the Denver County Court from
> exercising personal jurisdiction over Plaintiff and from exercising subject
> matter jurisdiction over claims that are already before this Court.  Plaintiff
> further requests sanctions be entered against Defendant Wilson, to
> including opposing counsel Huff, to whatever extent he facilitated or
> acquiesced to this undertaking.  Plaintiff also asks for any other relief that
> this Court deems proper in the premises.

(Docket No. 52 at 4).  In addition, plaintiff asks this court to "refer this matter to the

Attorney Regulation Counsel pursuant to Disciplinary Rule 251.4 and 251.9(a)(2)."

(Docket No. 52 at 4).

Defendant Wilson, through counsel, acknowledges in her Response (Docket No.

62) that when she heard plaintiff was going to be in Denver for the Scheduling

Conference on December 7, she "legally petitioned the District Court in and for Denver,

39

County Colorado for a restraining order against Harrington, to help ensure her safety. The court granted her petition and entered a restraining order against Harrington," a copy of which is attached to the Response.  (Docket No. 62 at 5).  Wilson sets forth in her Response her recitation of plaintiff's alleged conduct which purportedly warranted the restraining order, as well as plaintiff's then-recent assertion of yet another complaint with the Attorney Regulation Counsel and his purported threat of a lawsuit against Wilson in Texas on the same or similar basis on which he is asserting in the instant case.  Wilson asserts that "[p]laintiff's Motion should be denied because it is not only a frivolous and a vexatious attempt to harass and increase Wilson's legal costs, but the Court is without jurisdiction to determine the issues raised by plaintiff pursuant to the Rooker-Feldman doctrine."

Plaintiff's motion was moot before it was even filed because the restraining order was already issued by the Denver court.  Even if that were not the case, this court recommends abstention on this matter pursuant to <u>Younger</u>, discussed above.  Plaintiff has adequate remedies in state court with regard to that order and any and all restraining orders, and such proceedings involve matters which traditionally look to state law for their resolution.  Furthermore, this court finds no basis for the imposition of sanctions against Wilson or her attorney.  Wilson's obtainment of a restraining order has had no bearing on the progression of the instant case.  It is a state court matter that should be resolved in that jurisdiction.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that  Defendant Christy Ryan's Motion to Dismiss (Docket No.

25) be **granted**.  It is further


     **RECOMMENDED** the Fyfe Defendants' Motion to Dismiss (Docket No. 29) be

**granted**.  It is further


     **RECOMMENDED** Motion to Dismiss Plaintiff's First Amended Complaint

(Filed by Defendant Madeline Wilson and the Law Office of Madeline Wilson) (Docket

No. 38) be **granted**.  It is further


     **RECOMMENDED** that the State Defendants' Motion to Dismiss (Docket Nos. 39

and 42) be **granted**.  It is further


     **RECOMMENDED** that the Plaintiff's Emergency Forthwith Motion for Preliminary

Injunction and for Sanctions (Docket No. 52) be **denied**.


     **NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the**

**parties have ten (10) days after service of this recommendation to serve and file**

**written, specific objections to the above recommendation with the District Judge**

**assigned to the case.  The District Judge need not consider frivolous, conclusive,**

**or general objections.  A party's failure to file and serve such written, specific**

**objections waives *de novo* review of the recommendation by the District Judge,**

**Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives**

**appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of</u>**

**<u>Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411,**

**1412-13 (10th Cir. 1996).**


Dated: September 7, 2006              <u>s/ Michael J. Watanabe              </u>
      Denver, Colorado              Michael J. Watanabe
                                    United States Magistrate Judge